## LEWIS, *Appellant*, v. ZIEGLER.

### DIVISION TWO.

1.  **Partition Sale : PURCHASER : CONFIDENTIAL RELATION.** The evidence in this case *held* not to show such confidential relation between plaintiff and defendant as to prevent the latter from bidding at a partition sale of the former's land.

2.  **Parol Trust : EVIDENCE.** The evidence must be clear and cogent to establish a parol trust as to land. (*Rogers v. Rogers*, 87 Mo. 259.)

*Appeal from Ste. Genevieve Circuit Court.*—JAMES D. Fox, Judge.

AFFIRMED.

*F. H. Bacon* for appellant.

(1)  It is sought by this proceeding to declare defendant a trustee for plaintiff in purchasing the property in question and to divest title out of him, upon a proper accounting, for the following reasons: *First.* Defendant agreed to protect her interests, for as he himself said: "I told her we had always done right by

her," or as she says he agreed to bid in the property for her at the sale if it did not sell for over $200. *Second.* Defendant was an implied trustee for plaintiff, for she reposed special confidence in him, and relations of trust otherwise existed, so that he could not buy direct from her without showing that he paid full value, and otherwise dealt fairly with her. If he could not purchase directly from her he could not do so at judicial sale. *Third.* There are the additional elements of inadequacy of price, because the proof showed that the property was sold for $118 when it was worth $250, and the illiteracy of plaintiff who can neither read nor write. ( 2 ) The proof clearly shows that plaintiff was illiterate, able neither to read nor write ; she had known defendant from her childhood and respected him ; she had all her life been a servant in his family ; she for years was a neighbor ; when she revisited the town she visited his family ; she was their help in sickness ; defendant collected her rents when she was away, and in all respects she relied on him as a trusted and confidential adviser. These facts disqualified him for purchasing the property. 2 Pom. Eq. Jur., secs. 956–963. The rule also applies alike when the sale is private or at auction. 2 Pom. Eq. Jur., sec. 958 ; *Wilson v. Brookshire,* 25 N. E. Rep. 132. The doctrine that, " trustees, agents, administrators, guardians, attorneys or others whose connection with any other person is such as to establish a confidential relation between them " cannot purchase the property of such person is laid down in *Thornton v. Irwin,* 43 Mo. 163 ; *Turner v. Turner,* 44 Mo. 538 ; *Rea v. Copeland,* 47 Mo. 82 ; *Sheet v. Goss,* 62 Mo. 228 ; *Leavitt v. Laforce,* 71 Mo. 353. ( 3 ) Inadequacy of price, when coupled with any other facts calling for equitable interference, is a ground for relief. 2 Pom. Eq. Jur. 928. In this case defendant purchased for $118 property well worth $300 and yielding a net income equal to over seven per cent. on that valuation.

*Silver & Brown* for respondent.

(1) Even in an equity case the supreme court will defer to the finding of facts by the trial court because of the advantage possessed by the latter tribunal in observing the manner and demeanor of the witnesses, unless some cogent reason exists for a departure from the rule. *Mathias v. O'Neil*, 94 Mo. 520, and cases cited. The present case is one in which it was of peculiar advantage to see and hear the witnesses in order to arrive at the truth. (2) The weight of the evidence really sustains the finding of the trial court on the issues raised by the pleadings and the evidence. 51 Mo. 268; 87 Mo. 257. (3) The cases relied on by appellant in her brief are inapplicable, and do not support her contention here. (4) The alleged agreement that defendant promised to buy in the property for plaintiff at the partition sale if it went off for less than $200 is within the statute of frauds. The petition fails to make any allegation of fraud. *Hammond v. Cadwallader*, 29 Mo. 166. (5) The plaintiff has been guilty of such laches as will bar her recovery. *Burgess v. County*, 99 Mo. 496; *Schradski v. Albright*, 93 Mo. 42; *Kline v. Vogel*, 98 Mo. 239. Nor will her alleged ignorance of purchase by plaintiff at the partition sale avail her. *Broderick's Case*, 21 Wallace, 503.

MACFARLANE, J.—By this suit plaintiff undertakes to charge defendant with holding in trust for her a lot in the town of Ste. Genevieve, and to require him to account for the rents and profits.

Plaintiff is the widow of Leon Lewis who, in 1869, purchased the property for $300. The family occupied the lot as a homestead until about the year 1872, when they removed to St. Louis. The husband died in 1877 leaving four children. This was all the property deceased left. Plaintiff contracted a debt of $35 for funeral expenses of her husband. She had no means

Lewis v. Ziegler.

to pay this debt. She consulted an attorney, and he advised a partition sale of the property. Suit was commenced in March, 1878. Judgment in partition was rendered in May, 1879, and order of sale made. The sale took place in May, 1880, and defendant purchased at $118. The debt of $35 was paid by her attorney and the balance net proceeds after paying costs and expenses was paid plaintiff. All the children had died before the distribution.

The charge in the petition upon which plaintiff bases her right to relief is that she was uneducated and ignorant; that before she moved to St. Louis she lived near defendant, frequently worked for the family, went to him for advice, and reposed great confidence in him; that about the time the partition suit was commenced she placed the property in his charge for renting, paying taxes, and looking after generally, and that he agreed in case the property did not sell at partition sale for more than $200 to buy it in for her.

We think there can be no doubt from the evidence that plaintiff, who was a colored woman, was ignorant, uneducated and confiding, and when she lived in Ste. Genevieve was frequently employed in plaintiff's family as a domestic, and that she had great confidence in the integrity and ability of defendant and his willingness to advise and assist her. The property sold for only about one-half its actual value.

There can be no doubt that if confidential relations had been shown to exist between these parties in reference to the management and sale of this property, or if they had dealt directly with each other, the inequality in their business capacity and the relations between them would call for the closest scrutiny, and, if any unfairness or breach of confidence was manifest, a court of equity would interfere to require that to be done which in equity should have been done. We do not think the rule would go to the extent of creating a trust in the purchaser from the mere facts of the inequality,

and that confidential relations between the parties had existed generally seven or eight years previous to the transaction and had no connection with the particular matter about which complaint was made.

A careful examination of the evidence fails to satisfy us that defendant occupied such a relation of confidence to plaintiff as would preclude him from bidding in his own interest at the public sale of this land. It is true that some time pending the partition suit defendant collected and receipted for some rents of the property. The evidence tends rather to prove that this was done at the instance and for the accommodation of the tenant than of plaintiff.

Plaintiff testified on this subject as follows: "I brought Aunt Louisian (the tenant) over to Mr. Ziegler's; she said she could not read nor write. She would go over there and see about drawing the rent; I had taxes to pay; I could not come down every time to pay the taxes." When asked if she saw defendant, and what he said she answered, "she told him I wanted to put the rent in his hands and would pay it every month; so it was agreed." There was some evidence that this tenant did pay defendant some rent. Afterwards Maj. Rozier, plaintiff's attorney, collected rents and accounted for them.

As to the alleged agreement by defendant to purchase the property at the partition sale plaintiff testified: "I put it up at $200, and if it was less than $200 he was to bid it in for me, and, if he was not able, I would bid it in, or get some one to bid it in for me." This conversation must have been in the fall of 1878, and the land was not sold until the spring of 1880. Plaintiff does not claim to have had any subsequent agreement or understanding on the subject with defendant.

This conversation seems rather to have referred to some arrangement that might be made in the future than to have been intended as a concluded contract.

Plaintiff had employed in her partition suit a reputable and efficient attorney, whose professional duty required him to look after and protect her interest in the property. She never advised her attorney of any agreement with defendant to purchase. No arrangements were made about the money to be advanced in the purchase, or how reimbursements should be made. The sale was made publicly by the sheriff, and no interference with the bidding was shown. Plaintiff's attorney was present and managed the sale. No collusion was shown between defendant and the attorney. The sale was approved by the court, reported to plaintiff, the expenses and debts paid and the balance transmitted to her soon after the sale in 1880.

Plaintiff did not know defendant had bought the property until about the time this suit was brought, which is a strong circumstance going to show that she did not rely on any promise on his part to buy for her. Taking in view the testimony of defendant, who denies any kind of agreement or promise, and the testimony of Maj. Rozier, which tends to corroborate that of defendant, and taking plaintiff's testimony with the surrounding circumstances we think no case is made which calls for equitable relief. *Rogers v. Rogers*, 87 Mo. 259. Judgment affirmed. All concur.